McKiNNEY, J.,
delivered the opinion of the coui-t.
The assignment of errors in this case, presents various questions for our consideration.
1. It is argued, that his Honor, the circuit judge, erred in construing the instrument declared on. This *149 proposition assumes that the instrument upon its proper construction, contains no covenant to indemnify or to save harmless the covenantees against the payment of the notes to the banks, who were the holders thereof, but merely that the covenantors as endorsers of said notes, would not, in the event they should be first compelled to pay said notes, seek to hold the makers liable further than the assets of the testator’s estate, in their hands as Executors, would enable them to pay.
The instrument is inartificial in its language, and if the operative words used in the latter clause, were alone looked to, the construction contended for by the counsel of the plaintiff in error, would not be without plausibility; but in looking to the whole instrument, we are very clear that such is not the true construction of the agreement.
The rules and principles laid down for the exposition of contracts, have, for their sole object, “to do justice between the parties, by enforcing a performance of their agreement, according to the sense in which they mutually understood it at the time it was made.” Chitty on Con., 73. The intention is the governing principle of construction. In ascertaining the intention, the situation of the parties, the. motives that led to the agreement, and the objects designed to be effected by it, may all be looked to by the court. Ibid 74, note 2.
The construction must be upon the entire instrument, so that one part may help to expound the other. And in the construction of a deed or other instrument, the recitals may be looked to and used to explain a doubt as to the meaning and intention of the parties. 1 Spen. Eq., Jur., 528, 535. “ If, by a particular construction, *150 the stipulation of tbe party would be frivolous and utterly ineffectual, and tbe apparent object of tbe contract in reference to its subject matter would be frustrated; but a contrary exposition, though per se, tbe less appropriate, looking to words only, would produce a different effect, tbe latter interpretation shall be applied to tbe agreement if it can possibly be supported by any thing in tbe contract, or tbe nature thereof.” Ohitty on Contracts, 80.
No particular form of words is necessary to make a covenant, but any words which manifest tbe intention of tbe parties in respect to the subject matter of tbe contract, are sufficient. Eac. Abr. Covenant. A. Com. Dig. Covenant, A. 2. Lebr., N. P., 469. 3 John. R., 44.
Applying these principles to tbe case under consideration, tbe conclusion is inevitable, that tbe instrument declared on, in its legal effect, is a covenant to indemnify tbe defendants in error against a personal liability, or in other words, to prevent their suffering loss or damage in consequence of having become tbe makers of tbe several notes specified in said instrument. Looking to tbe situation of tbe parties at tbe time of tbe agreement, tbe motives which prompted it, and tbe end to be effected by it, no other sensible meaning can be given to it.
It is shown by tbe recitals of tbe instrument, that no personal liability whatever, rested upon James M. Hamilton and Mary House, as executors, in reference to tbe pre-existing notes, which were under protest, made by tbe testator, and of which, McNairy and M. A. Hamilton were first endorsers. And on tbe other band, it is apparent that McNairy and Hamilton, as endorsers, bad *151 become fixed with a liability from which there was no escape in any event.
No motive or reason, consistent with our experience, can be imagined why the executors, in the then doubtful condition of the estate, and which very shortly after-wards proved to be insolvent, should consent to incur personal liability for so large an amount without consideration, and with no indemnity. Such a conclusion is utterly irreconcilable with, perhaps, the most universal and urgent principle of human action, self interest. But we can easily perceive, from the facts recited in the instrument, a reasonable and adequate motive on the part of the endorsers, for soliciting the executors to enter into the arrangement. The endorsers were inevitably liable to the payment of the protested notes, and subject to bear the loss personally, except so far as the assets of House’s estate might turn out to be sufficient to reimburse them.
As a mercantile firm in Nashville, their credit was likely to be ruinously affected by the dishonor of their paper; hence, it was equally important for them to remove the suspension of their credit in the banks, and to procure time for the payment of the debts.
In putting the executors forward to execute new notes, in' renewal of those under protest, the endorsers were effecting a most important object, the sole benefit of which enured to them personally, and therefore they might well undertake that the executors, in doing so, should be subject to no hazard of personal loss.
In thus undertaking to indemnify the executors, the endorsers, while securing to themselves an important benefit, were taking upon themselves no greater or dif *152 ferent liability, than that with wbicb, by law, they already stood, charged.
The instrument, it is true, is less artificial and explicit in its expression than it might have been, but the intention is sufficiently apparent. It imports an absolute engagement on the part of McNairy and Hamilton to “release,” or exonerate the executors from the payment of said notes to the banks, except so far as the assets of the estate in their hands, might, in the due course of administration, enable them to pay.
And this covenant was broken the instant the executors were left to make payment of these notes to the banks. The covenantees cannot resist a recovery in the present action on the ground that the ability or inability of House’s estate to discharge these notes, in whole or in part, has not yet been ascertained. The administration of the estate having been referred to a court of chancery, the defendants must have recourse to the assets, if any there be, in the regular mode.
2. In the progress of the cause, the defendant, Hamilton, confessed judgment for the damages sought to be recovered, and in the trial of the issues as to the defendant, McNairy, was offered and examined as a witness on behalf of the plaintiffs, for the purpose, mainly, of establishing the consideration upon which the covenant was founded. This was objected to, and is now assigned for error.
This proceeding, though irregular, constitutes no error respecting the merits. Generally speaking, a contract under seal imports a consideration, and therefore, no averment, or proof of a consideration was requisite to be made. But, if it had been required to show a conside *153 ration, it is sufficiently apparent upon tbe face of the instrument. The issue and proof upon this point, being wholly irrelevant and immaterial, cannot, in this court, be made a ground of reversal.
3. It is said, that as the notes, except one, were paid equally by Jas. M. Hamilton -and John Thompson, after the marriage of the latter to Mrs. House, each paying his own money, that each should have sued separately, and that a joint action will not lie in such case.
This proposition is clearly untenable. The- covenant being made to two persons jointly, they must be joined if living, and the failure to join wpuld defeat the 'action-, although they may have severally paid the debt, and out of their separate funds, either in equal or unequal proportions. 6 Wend., 629. 3 Cowen R., 142. Chitty on Pl., 8. How the law upon this point, in an action of assumpsit for money paid, may be, we need not now enquire.
4. It is proved by Mr. Ewing, that on the 22d of October, 1851, John Thompson, one of the plaintiffs, “ gave him six hundred and seventy-seven dollars to be paid to the Hnion Bant in extinction of the judgment of said bant,” upon one of the notes specified in the covenant declared on. And it is also proved that this transaction toot place on the day preceding the marriage between said Thompson and Mrs. House. For this sum there was a recovery in this case, as well as for the several aipounts paid in discharge of the other notes described in this covenant.
It is said, that as to this payment on the 22d of October, 1851, there is no evidence to support the verdict, an,d so we think.
*154 It is certainly true, as argued, that if Thompson paid the money at the request of Mrs. House, and for her prior to the marriage, it might well be recovered in the present action. But there is no evidence whatever, in this record, that the money was paid to Mr. Ewing for Mrs. House, or at her request, or even with her knowledge; and this want of proof cannot be supplied by inference from the fact of the marriage between Thompson and Mrs. House on the following day. The character of the transaction, as well as the legal effect, must be judged by the state of facts existing at the time of the payment. And it is clear, upon the proof before us, that if the marriage had not followed, Thompson would have- had no pretext for claiming to recover for this payment, against Mrs. House.
For aught that appears, it was merely an officious, voluntary act, wholly incapable of creating the relation of debtor and creditor between them.
Upon the last ground alone, the judgment must be reversed, and a new trial granted.